UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
THOMAS J. MCMANAMON,                 :
                                     :
                    Plaintiff,       :
          v.                         :     07 Civ. 10575 (BSJ)(JCF)
                                     :     **Opinion & Order**
                                     :
CITY OF NEW YORK DEPARTMENT OF       :
CORRECTIONS; JANICE JACKSON,         :
COMMANDING OFFICER/A.I.U.; THOMAS    :
SUMMERS, CAPTAIN/A.I.U.; ALAN        :
VENGERSKY, ASSISTANT COMMISSIONER,   :
                                     :
                    Defendants.      :
                                     :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/16/09

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On October 30, 2007 <u>pro se</u> Plaintiff Thomas J. McManamon ("Plaintiff") filed suit against Defendants the City of New York Department of Corrections (the "DOC"), Commanding Officer Janice Jackson ("Defendant Jackson"), Captain Thomas Summers ("Defendant Summers"), and Assistant Commissioner Alan Vengersky ("Defendant Vengersky") (collectively "Defendants") alleging claims arising out of Defendants' rejection of Plaintiff's application for the position of corrections officer with the DOC.  Before the Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants' Motion is GRANTED.

1

BACKGROUND[1]

This case arises out of Defendants' disqualification of Plaintiff's January 2007 application to work as a corrections officer with the DOC (the "2007 Application").  Plaintiff alleges that Defendants improperly rejected his 2007 Application (1) for discriminatory reasons and (2) to retaliate against Plaintiff for filing an Equal Employment Opportunity Commission ("EEOC") charge in October 2005 (the "2005 EEOC Charge") alleging that Defendant Jackson had disqualified his prior, April 2005 application for employment with DOC (the "2005 Application") for discriminatory reasons.  (See Compl. 6.)

---

[1]     The facts stated here are drawn from Defendants' Local Rule 56.1 statement and from Plaintiff's submissions. Under Local Civil Rule 56.1(c), "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted."  See also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Defendants in the instant case argue that "because of plaintiff's failure to follow . . . Local Rule 56.1, the facts in Defendants' 56.1 should be deemed admitted by the Court." (Def. R. Mot. 3-4.)  While Plaintiff has not submitted a statement of material facts in dispute as required under Local Rule 56.1, he did submit an affirmation in opposition to Defendants' motion for summary judgment in which he presents a different account of certain facts set forth in Defendants' Rule 56.1 statement. Therefore, "[i]n light of plaintiff's pro se status, I will excuse his failure to comply with the rules, and treat his opposition papers as though they contained a counterstatement under Rule 56.1."  Sease v. Phillips, No. 06 Civ. 3663, 2008 WL 2901966, at *1 n.1 (S.D.N.Y. July 24, 2008).  Where Plaintiff has not offered any facts to controvert those asserted in Defendants' Rule 56.1 statement, the Court accepts the facts in Defendants' Rule 56.1 statement as true. Cf. Duran v. Cushman & Wakefield Inc., No. 06 Civ. 14411, 2007 WL 2667128, at *1 n.2 (S.D.N.Y. Sept. 10, 2007) (finding that pro se plaintiff's "failure to respond to or contest the facts set forth by defendant in its Rule 56.1 statement constitutes an admission of those facts").

Plaintiff filed his 2005 Application to work as a corrections officer with DOC on or about April 26, 2005.  (See Movants' Rule 56.1 Stmt. ¶ 6.)  In a candidate review, Investigator Indira Mahadeo of the Applicant Investigation Unit ("AIU") stated that Plaintiff had failed to disclose in his 2005 Application two arrests for driving under the influence and one arrest for domestic violence.  (Id. ¶ 15.)  Investigator Mahadeo further found that Plaintiff had failed to disclose that "in 1990 he took and passed the NYPD Police Officer Exam" but "failed the NYPD psychological exam."  (Id. ¶ 14.)  Defendants report that Investigator Mahadeo did not recommend Plaintiff for the position of corrections officer, and that this decision was based on Plaintiff's failure to disclose his negative background history.  (See id. ¶ 19.)

Nathaniel White, the AIU team leader, concurred with Investigator Mahadeo's no-hire conclusion, as did Louis Phillips, the AIU Investigative Captain.  (See id. ¶¶ 20-21.) Defendant Jackson, the AIU commanding officer, reiterated this determination, stating on the case review form that she disapproved Plaintiff for hire based on his "failure to disclose 3 prior arrests."  (Id. ¶ 23.)  Defendant Vengersky, Assistant Commissioner of DOC's Personnel Bureau, made the final determination not to hire Plaintiff.  (Id. ¶ 25.)  On or about July 6, 2005, the AIU sent Plaintiff a letter stating that his

3

2005 Application had been considered and that he had not been selected for employment as a corrections officer.  (Id. ¶ 26.)

Plaintiff alleges in his Complaint that he filed the 2005 EEOC Charge in October 2005 based on the disqualification of his 2005 Application.  (See Movants' Rule 56.1 Stmt. ¶¶ 32, 39.) Plaintiff stated in deposition testimony that he filed the alleged 2005 EEOC Charge against Defendant Jackson and Investigator Mahadeo for "discriminating against me for my race, my age or alcoholism because I admitted that I had an alcohol problem."  (Id. ¶ 35.)  Plaintiff also testified that he does not have a copy of the alleged 2005 EEOC Charge, and that he does not possess any other correspondence either to or from the EEOC in connection with the alleged 2005 EEOC Charge.  (Id. ¶ 33-34.)

Plaintiff filed his 2007 Application to work as a corrections officer with the DOC on January 4, 2007.  (See Movants' Rule 56.1 Stmt. ¶ 47.)  In a candidate review, Investigator Steven Nardulli of the AIU reported that Plaintiff had failed to disclose in his 2007 Application a February 7, 1980 arrest for grand larceny, possession of stolen property, criminal mischief, and unauthorized use of a vehicle.  (See id. ¶¶ 66, 18, 55.)  Following his evaluation of Plaintiff, Investigator Nardulli found that Plaintiff's "past actions indicate[d] a lack of good moral character which is required for

4

the position of Correction Officer."  (Id. ¶ 67.)  Based on this finding, Investigator Nardulli did not recommend Plaintiff for the position of corrections officer.  (Id. ¶ 68.)

Defendant Summers, an AIU Investigative Captain, agreed with Investigator Nardulli's conclusion that the DOC should not hire Plaintiff.  (See Movants' Rule 56.1 Stmt. ¶ 69.)  Defendant Jackson, the commanding officer, also agreed with this determination, and disapproved Plaintiff for hire based on "character background findings."  (Id. ¶ 70.)  Defendant Vengersky then made the final determination on Plaintiff's 2007 Application, and affirmed the no-hire decision of the earlier reviewers.  (Id. ¶ 71.)

On April 6, 2007, Plaintiff sent DOC Commissioner Martin Horn a letter reiterating his interest in employment with DOC. (See Movants' Rule 56.1 Stmt. ¶ 108.)  In this letter, Plaintiff also indicated his belief that "everyone in the applicant investigation unit from Investigator Nardulli to Commanding Officer Jackson ha[d] done an outstanding job in handling [his] case."  (Id.)

On April 17, 2007, the AIU sent Plaintiff a Notice of Proposed Disqualification informing Plaintiff that his 2007 Application for the position of corrections officer would be disqualified based on Plaintiff's "character/background," his omission of pertinent facts from the 2007 Application, and his

5

conviction record.   (See Movants' Rule 56.1 Stmt. ¶¶ 72-74.)   In deposition testimony, Defendant Summers stated that the "omission of pertinent facts" referenced in the Notice of Proposed Disqualification was the "arrest dated February 7, 1980, for grand larceny, possession of stolen property, criminal mischief, unauthorized use of a vehicle. . . .   [t]hat was omitted during the investigation with this investigator."   (Id. ¶ 75.)   Defendant Summers also testified that the "conviction record" referenced in the Notice of Proposed Disqualification was Plaintiff's conviction record.   (See id. ¶¶ 76, 55-60.)

On April 20, 2007, Defendant Vengersky sent Plaintiff a second note indicating that he had received Plaintiff's April 6, 2007 letter to Commissioner Horn regarding Plaintiff's interest in employment with DOC.   (See Movants' Rule 56.1 Stmt. ¶¶ 78-79.)   In that letter, Defendant Vengersky also stated that Plaintiff's "case was carefully reviewed by the Investigator at AIU, the Investigative Captain and the Commanding Officer of AIU" and that based on "these individual assessments [he] determined that [Plaintiff] would not be selected."   (Id. ¶ 80.) Defendant Vengersky further stated that he had "carefully considered [Plaintiff's] entire history" and had concluded that he could not "consider reversing [his] non-selection decision." (Id. ¶ 81.)

On August 23, 2007, Plaintiff filed a Charge of Discrimination (the "2007 EEOC Charge") based on Defendants' disqualification of his 2007 Application for the position of corrections officer.  (See Movants' Rule 56.1 Stmt. ¶ 110.)  The EEOC issued Plaintiff a Notice of Right to Sue, and Plaintiff received the Notice on October 10, 2007.  (See id. ¶ 111.)

On October 30, 2007,[2] Plaintiff filed the instant action in the United States District Court for the Southern District of New York alleging racial and age discrimination in hiring decisions in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-e17, the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621-34, New York State Human Rights Law, N.Y. Exec. Law §§ 290-97 (the "NYSHRL"), and New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101-131 (the "NYCHRL").  (See Compl. 1.) Plaintiff further claimed that "Commanding Officer Jackson is retaliating for my previous complaint taken out on her two years ago with the E.E.O.C., which I later rescinded." (Id. 6.)

---

[2]     The Complaint was not formally accepted for docket assignment by the Clerk's Office until November 26, 2007.  (See Compl. 1.)  However, Plaintiff signed and dated the Complaint on October 30, 2007, and the Pro Se Office's date stamp reflects that date.  (See id.)  Because "the date stamp from the Pro Se Office acts as the date a complaint is deemed filed," the instant case is deemed to have been filed on October 30, 2007.  Rodney v. Goord, No. 00 Civ. 3724, 2003 WL 21108353, at *5 (S.D.N.Y. May 15, 2003); see also Quinones v. C.L.B. Check Cashing, Inc., No. 07 Civ. 281, 2008 WL 5147029, at *3 n.4 (S.D.N.Y. Dec. 4, 2008) (finding that the official filing date for pro se complaints is the date stamped by the Pro Se Office rather than the docketing date).

Defendants now move for summary judgment on all counts. (See Def. Mot. Summ. J. 1.)

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from

8

which a reasonable inference could be drawn in favor of the
nonmoving party, summary judgment is improper." Chambers v. TRM
Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). Because
Plaintiff brings this action pro se, the Court must construe his
papers liberally and "interpret them to raise the strongest
arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787,
790 (2d Cir. 1994) (internal citation omitted). However,
Plaintiff may not "rely simply on conclusory allegations or
speculation to avoid summary judgment, but instead must offer
evidence to show that [his] version of the events is not wholly
fanciful." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999).

## DISCUSSION

In his Complaint, Plaintiff asserts that Defendants
disqualified Plaintiff's 2007 Application on the basis of: (1)
racial discrimination in violation of Title VII, the NYSHRL, and
the NYCHRL; (2) age discrimination in violation of the ADEA, the
NYSHRL, and the NYCHRL; and (3) retaliation against Plaintiff
for allegedly filing the 2005 EEOC Charge against Defendant
Jackson, in violation of Title VII, the ADEA, the NYSHRL, and
the NYCHRL. (See Compl. 6.) The Court finds all of Plaintiff's
claims to be without merit and thus GRANTS summary judgment in
favor of Defendants.

### I.   Plaintiff's Federal Law Claims

9

A plaintiff seeking to make out a claim for discrimination under Title VII or the ADEA must first establish a prima facie case of discrimination. Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001). In order to meet this burden, the plaintiff must show that: (1) he belonged to a protected class or was in the protected age group; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). "Under either statute, once a plaintiff has established a prima facie case, the burden shifts to the defendant . . . to offer a legitimate, non-discriminatory rationale for its actions." Id. at 138. Once the defendant has proffered its nondiscriminatory reason, "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). To show pretext, "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Id. (internal quotations omitted).

In the instant case, Defendants argue that Plaintiff cannot prove discrimination because "plaintiff does not provide any evidence other than conclusory . . . allegations and inadmissible hearsay to support his allegations of discrimination" (Def. Mot. Summ. J. 17) and "there is no evidence linking plaintiff's non-selection to any of plaintiff's protected characteristics or alleged protected activities" (Def. R. Mem. 1-2.)   The Court agrees.

## A. Racial Discrimination

Plaintiff alleges that Defendants discriminated against him on the basis of race in violation of Title VII when they rejected his 2007 Application for employment with DOC. Specifically, Plaintiff testified that he believes that Defendant Jackson discriminated against him based on his race because "[Plaintiff] wasn't given a direct answer as to what the status of [his 2007] application was in March, April [of 2007]" and because "[i]t appears that if [he were] black, [he] would have had a better opportunity to get hired for the job." (01/13/09 O'Connor Decl. Ex. A ("Pl. Dep.") 96:24-25, 97:2-3.) In support of this interpretation, Plaintiff stated that "he believe[s] there's a larger amount of candidates that are black than whites that are employees of the New York City Department of Corrections." (Id. 97:12-14.)   Plaintiff alleges that Defendant Summers discriminated against him based on race by

11

means of "inaccurate assessments made in his report, and . . . him misinterpreting my paperwork," (id. 91:23-25,) and that this alleged mishandling took place "because I'm white and I'm a low minority of people that get hired for the job," (id. 92:5-7; 97:7-10.)  Plaintiff likewise alleges that Defendant Vengersky discriminated against Plaintiff based on his race "[f]or the same reasons that [he] stated previous[ly] for Jackson and Summers."  (Id. 97:25-98:1.)

The Court finds that these unsubstantiated allegations are insufficient to give rise to an inference of discrimination. See, e.g., Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) (finding that "the plaintiff's personal conclusory assumptions are insufficient to support . . . an inference [of discrimination]"); Khan v. Abercrombie & Fitch, Inc., No. 01 Civ. 6163, 2003 WL 22149527, at *6 (S.D.N.Y  Sept. 17, 2003) (holding that "[plaintiff's] statement that she was discriminated against because she is 'black' is [an] unsupported, conclusory allegation" insufficient to state a prima facie case under Title VII); Sklar v. New York Life Ins. Co., No. 00 Civ 2254, 2001 WL 984724, at *7 (S.D.N.Y. Aug. 27, 2001) (finding that plaintiff failed to state a prima facie case of discrimination when plaintiff "could not articulate any facts, beyond conclusory allegations, from which to infer that the adverse employment decision was motivated by . . .

discrimination"). A plaintiff alleging violation of Title VII must do "more than cite to his alleged mistreatment and ask the court to conclude that it must have been related to his race." Grillo v. New York City Transit Auth., 291 F.3d 231, 235 (2d Cir. 2002) (internal quotation omitted); see also Simpri v. City of New York, No. 00 Civ. 6712, 2003 WL 23095554, at *4 (S.D.N.Y. Dec. 30, 2003) (noting that "there must be some evidence to support an inference of discrimination other than the fact that plaintiff is a member of a protected class").

Plaintiff's allegation that Defendant Summers mishandled his 2007 Application likewise does not give rise to an inference of racial discrimination. See, e.g., Ryan v. New York City Dep't of Corr., No. 92 Civ. 4416, 1995 WL 608327, at *5 (S.D.N.Y Oct. 10, 1995), aff'd 101 F.3d 686 (2d Cir. 1996) ("Plaintiff's criticisms of, among other things, [his interviewer's] desk, the number of times he met with the different officers, and the interview process generally, are irrelevant to a determination of whether plaintiff was discriminated against."). Even assuming that Defendant Summers did mishandle the 2007 Application, the anti-discrimination law "does not make employers liable for doing stupid or even wicked things; it makes them liable for discriminating." Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998). In the absence of evidence of legally cognizable discriminatory behavior, a court "cannot

infer discrimination from thin air." <u>Lizardo v. Denny's, Inc.</u>,
270 F.3d 94, 104 (2d Cir. 2001).[3]

## B. Age Discrimination

Plaintiff also alleges that Defendants discriminated
against him because of his age. (<u>See</u> Compl. 6.) Plaintiff's
primary evidence of age discrimination appears to be that DOC
declined to hire Plaintiff when Plaintiff was forty-seven years
old and Plaintiff's understanding that "the Department of
Corrections was looking to lower the age limit to 38 instead of
not having an age limit." (Compl. 6; Pl. Dep. 92:10-14.)

Plaintiff's claim of age discrimination therefore hinges
entirely on Plaintiff's deposition testimony that he "talked to

---

[3]     To the extent that Plaintiff is attempting to assert a "pattern or
practice" claim of discrimination, such a claim fails as a matter of
law.  While neither the Supreme Court nor the Second Circuit have
specifically addressed the question of whether an individual plaintiff
can maintain a private, non-class action pattern or practice claim,
district courts within this circuit have suggested that they cannot.
<u>See, e.g.</u>, U.S. v. City of New York, -- F. Supp. 2d --, 2009 WL
1916270, at *6 (S.D.N.Y. July 2, 2009) ("Courts have held that an
individual cannot maintain a private, non-class, pattern-or-practice
claim."); <u>Tucker v. Gonzales</u>, No. 03 Civ. 3106, 2005 WL 2385844, at *5
(S.D.N.Y. Sept. 27, 2005) (collecting cases holding that pattern or
practice claims are limited to class actions); <u>see also Blake v. Bronx
Lebanon Hosp.</u>, No. 02 Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug.
11, 2003) (doubting the propriety of a pattern or practice claim in a
non-class action complaint).

        To the extent that Plaintiff may be attempting to assert a
disparate impact cause of action, such a claim also fails.  "To
establish a prima facie case of disparate impact, a plaintiff must show
that a facially neutral employment policy or practice has a significant
disparate impact." <u>Brown v. Coach Stores, Inc.</u>, 163 F.3d 706, 712 (2d
Cir. 1998).  In the instant case, Plaintiff's disparate impact claim
fails because he does not "adequately allege a causal connection
between any facially neutral policy at [DOC] and the resultant
proportion of [white] employees." <u>Id.</u>  The law is clear that
"[a]llegations which contend only that there is a bottom line racial
imbalance in the work force are insufficient" to maintain a disparate
impact claim.  <u>Id.</u>

14

people that work in the Department of Corrections" and that
these people "heard that the commissioner state[d] that they're
going to change the age limit to 38." (Pl. Dep. 92:17-18, 96:3-
4.) Plaintiff's report that he heard rumors regarding a
possible age limit, however, is inadmissible hearsay and cannot
be relied upon in opposition to a motion for summary judgment.
See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1977) ("[O]nly
admissible evidence need be considered by the trial court in
ruling on a motion for summary judgment.").[4]

Accordingly, the Court finds that Plaintiff's conclusory
and hearsay-based allegations of age discrimination fail to give
rise to the inference of discrimination required to state a
prima facie case under the ADEA. Plaintiff must provide more
evidence than merely his age and unsubstantiated, inadmissible
allegations of DOC plans to survive summary judgment on this
count. See, e.g., Sklar, 2001 WL 984724, at *5 (finding that
the mere fact of plaintiff's age does not raise an inference of
discrimination).

### C. Defendants' Legitimate Non-Discriminatory Reason for
### Plaintiff's Non-Selection

---

[4]   Defendant Vengersky testified that there has been no specific
discussion at DOC of implementing an age limit for corrections
officers. Defendant Vengersky further stated that "[t]here is talk
about a company coming in to look at our minimum requirements, our
agility standards and issues of minimum qualifications, such as
education and age, sort of an omnibus look at all of the minimum
requirements." (01/13/09 O'Connor Decl. Ex. L, 11:23-12:5.)

15

Even assuming that Plaintiff could make out a prima facie case of racial and/or age discrimination, his claims would still fail.  Defendants have articulated a legitimate, non-discriminatory reason for not hiring Plaintiff:  his failure to disclose a past arrest.  Because Plaintiff has not offered any evidence to show that Defendants' stated reason for disqualifying his 2007 Application is a mere pretext for discrimination, Plaintiff cannot satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."  Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (internal quotation omitted); see also Weinstock, 224 F.3d at 42 (discussing the evidence required to prove pretext).

Plaintiff's failure to disclose his full criminal history on his 2007 Application is a sufficient race- and age-neutral and legitimate reason for Defendants' refusal to hire Plaintiff as a corrections officer.  See, e.g., Jowers v. Lakeside Family & Children's Servs., No. 03 Civ. 8730, 2005 WL 3134019, at *8 (S.D.N.Y. Nov. 22, 2005) ("Plaintiff's concealed criminal history, in contradiction to the information he provided on his employment application, is a sufficient race-neutral and legitimate reason to terminate the Plaintiff."); Obabueki v. Int'l Bus. Machs. Corp., 145 F. Supp. 2d 371, 381 (S.D.N.Y. 2001) ("It is well settled that a misstatement of a material

16

fact on an employment application is a sufficient non-discriminatory ground for an employer's refusal to hire." (internal quotations omitted)).

Because Defendants have offered a legitimate, non-discriminatory reason for disqualifying Plaintiff's 2007 Application, and Plaintiff has not shown that the articulated non-discriminatory reason is merely a pretext for discrimination, Plaintiff's discrimination claims under both Title VII and the ADEA are DISMISSED.

## II. Plaintiff's Retaliation Claim

Plaintiff alleges that Defendants violated Title VII and the ADEA by disqualifying his 2007 Application in retaliation for Plaintiff's alleged filing of the 2005 EEOC Charge. (See Compl. 6.) In order to make out a prima facie case of unlawful retaliation under Title VII or the ADEA, a plaintiff must adduce sufficient evidence to permit a trier of fact to find that: (1) the plaintiff engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection existed between the protected activity and the adverse action. See Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to establish legitimate, non-discriminatory business

17

reasons for the action.   See Cosgrove v. Sears, Roebuck & Co., 9
F.3d 1033, 1039 (2d Cir. 1993).

In the instant case, Defendants argue that Plaintiff has
not proven that he engaged in protected activity prior to the
filing of his 2007 EEOC Charge on August 24, 2007 and that, even
assuming that Plaintiff did engage in protected activity by
filing a 2005 EEOC Charge following the disqualification of his
2005 Application, Plaintiff is unable to prove a causal
connection between the protected activity and the alleged
retaliation. (See Def. Mot. Summ. J. 18-19.)   The Court agrees.

Plaintiff alleges that Defendant Jackson's decision to
disapprove his 2007 Application was made in retaliation for
Plaintiff's alleged filing of the 2005 EEOC Charge.  (See Compl.
6.)  However, Plaintiff has been unable to produce a copy of the
alleged 2005 EEOC Charge.  (See Pl. Dep. 73:24-25.)   Therefore,
the only evidence that Plaintiff has presented that he engaged
in protected activity prior to filing the 2007 EEOC Charge are
his own unsupported statements that he filed a 2005 EEOC Charge
in October 2005.[5]

Even if Plaintiff could prove that he engaged in protected
activity prior to Defendants' disqualification of his 2007

---

[5]      In response to an inquiry by Defendants with regard to the alleged 2005
EEOC Charge, John B. Douglas of the New York District Office of the
EEOC stated that "[the EEOC] received an inquiry in the mail from
[Plaintiff] in October of 2005, but that it did not become an EEOC
Charge, and was not served on any respondent." (See O'Connor Decl.,
Mar. 24, 2009, Ex. U.)

18

Application, Plaintiff is unable to establish a causal link between the protected activity and his non-selection for the position of corrections officer. In theory, "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001). However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). In district courts within the Second Circuit, "[t]ime periods greater than one year have generally been rejected when offered to indirectly establish a causal connection between an act and its purported consequences." Deravin v. Kerik, No. 00 Civ. 7487, 2007 WL 1029895, at *11 (S.D.N.Y. Apr. 2, 2007) (collecting cases).

In the instant case, Plaintiff does not present any direct evidence of retaliation, and appears to rely on indirect, temporal evidence to support his retaliation claim. Since Plaintiff allegedly filed the 2005 EEOC Charge against Defendant Jackson in October 2005, and the determination to disqualify Plaintiff's 2007 Application was made in April 2007, the alleged

19

retaliatory act occurred more than one year after the alleged
protected activity and a causal connection cannot be
established.  See, e.g., Daly v. Presbyterian Hosp., No. 98 Civ.
4253, 2000 WL 8268, at *6 (S.D.N.Y. Jan. 4, 2000) (granting
summary judgment on retaliation claim because "[t]here is a
lapse of time of over one year [between Plaintiff's complaint
and the allegedly retaliatory act] which, in the absence of
other direct or circumstantial evidence of retaliation, is
insufficient evidence of causation").

Because Plaintiff cannot show that he engaged in protected
activity prior to Defendants' disqualification of his 2007
Application and cannot establish a causal connection between his
alleged protected activity and Defendants' allegedly retaliatory
act, Plaintiff's retaliation claims under both Title VII and the
ADEA are DISMISSED.

### III.  Plaintiff's State and City Law Claims

Plaintiff's remaining claims for employment discrimination
arise under New York State and City Human Rights Law.  Pursuant
to 28 U.S.C. § 1367, this Court may exercise supplemental
jurisdiction over state law claims that are so related to a
party's federal claims that "they form part of the same case or
controversy."  28 U.S.C. § 1367(a).  Thus, the exercise of
supplemental jurisdiction is appropriate where "the facts
underlying the federal and state claims substantially overlap[]

20

. . . or where presentation of the federal claim necessarily [brings] the facts underlying the state claim before the court." Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000). Conversely, supplemental jurisdiction is lacking "when the federal and state claims rest[] on essentially unrelated facts." Id.

When deciding whether to exercise supplemental jurisdiction, courts should consider the values of judicial "economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Even if all federal claims have been dismissed, a court may retain supplemental jurisdiction over pendant state claims if "[d]eclining jurisdiction over the state-law claims . . . further[s] neither fairness nor judicial efficiency, nor [do] those causes of action require the district court to resolve any novel or unsettled issues of state law." Mauro v. S. New England Telecomm., 208 F.3d 384, 388 (2d Cir. 2000).

In the instant case, Plaintiff's state and municipal law claims "derive from a common nucleus of operative fact" as his federal law claims. Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004). Therefore, the Court exercises supplemental jurisdiction over the NYSHRL and NYCHRL claims.

A.   New York State Law Claims

Plaintiff's racial discrimination claims under the NYSHRL are subject to the same standard of proof as claims under Title VII. See Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."); Cretella v. Liriano, -- F. Supp. 2d --, 2009 WL 1730993, at *16 n.13 (S.D.N.Y. June 17, 2009). Likewise, "age discrimination suits brought under the [NYSHRL] . . . are subject to the same analysis as claims brought under the ADEA." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

As described above, Plaintiff has failed to make out a prima facie case of race or age discrimination under Title VII or the ADEA because he cannot demonstrate that his 2007 Application was disqualified under circumstances giving rise to an inference of discrimination. Plaintiff has also failed to state a claim for retaliation under either Title VII or the ADEA. Because Plaintiff's state law claims of race and age discrimination and retaliation are evaluated according to the same standard as his Title VII and ADEA claims, and the Title VII and ADEA claims have been found deficient, these state claims cannot survive summary judgment. Accordingly, Plaintiff's claims under the NYSHRL are DISMISSED.

B.   New York City Law Claims

22

The NYCHRL, like Title VII, prohibits employment discrimination on the basis of race or age as well as retaliation for complaining of alleged discrimination.  However, the municipal law "explicitly requires an independent liberal construction analysis in all circumstances, even where State and federal civil rights laws have comparable language.  The independent analysis must be targeted to understanding and fulfilling . . . the City HRL's 'uniquely broad and remedial' purposes, which go beyond those of counterpart State or federal civil rights laws."  Williams v. New York City Housing Auth., 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009).

Accordingly, the Court construes the NYCHRL claims independently from Plaintiff's state and federal claims.  Having reviewed the record separately with respect to Plaintiff's municipal claims while keeping in mind the New York City law's "uniquely broad and remedial" purposes, the Court concludes that Plaintiff has failed to demonstrate any genuine issue of material fact as to whether any Defendant discriminated against Plaintiff because of his race or age or took action against Plaintiff in retaliation for Plaintiff's alleged 2005 EEOC Charge.  While Defendants have come forward with a concrete justification for disqualifying Plaintiff's 2007 Application, Plaintiff offers nothing more than conclusory allegations and speculation, which fail to support any inference of

23

discriminatory or retaliatory conduct.  See, e.g., Williams, 872 N.Y.S.2d at 41 ("[S]ummary judgment will still be available where [employers] can prove that the alleged discriminatory conduct in question does not represent a 'borderline' situation but one that could only be reasonably interpreted by a trier of fact as representing no more than petty slights or trivial inconveniences.").  Therefore, to the extent the NYCHRL is more liberal than its state or federal counterparts in permitting a plaintiff to recover based on claims of discrimination or retaliation, Plaintiff has still failed to frame any genuine issue of fact as to discrimination or retaliation, and Plaintiff's municipal claims are DISMISSED.

### CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED in its entirety.  Because no further issues remain to be decided, the Clerk of the Court is directed to close the case.

**SO ORDERED:**


_____
**Barbara S. Jones**
**UNITED STATES DISTRICT JUDGE**


Dated:     New York, New York
           September 16, 2009



24